UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04CV-543-H

KIM HARTLEY                                                                             PLAINTIFF

V.

UNITED PARCEL SERVICE, INC.                                            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Kim Hartley, has filed suit against United Parcel Service, Inc. ("UPS"), her former employer, alleging disability and sex discrimination in violation of the Kentucky Civil Rights Act (the "KCRA"). Plaintiff claims that UPS terminated her because she is an alcoholic and because she is a woman. Discovery is now complete and UPS has moved for summary judgment.

I.

Plaintiff worked as a flight crew scheduler for UPS in Louisville, Kentucky for fourteen years from January 30, 1989 to October 23, 2003. She was a non-union employee throughout the course of her employment and accordingly, her employment was not governed by a collective bargaining agreement.

According to the record before this Court, UPS first expressed concern about Plaintiff's work performance in early 2003. At that time, the UPS Crew Scheduling Manager, Richard Cherry ("Cherry"), complained to Plaintiff about her frequent absenteeism. Plaintiff admits that she frequently missed scheduled work days and reports that her absences were the result of an addiction to alcohol.

Around that time, Cherry suggested that Plaintiff attend counseling for alcohol-related treatment. On January 9, 2003, Plaintiff checked herself into an out-patient alcohol rehabilitation program at Ten Broeck Health Care where she sought counseling for nearly a month.  The doctors on staff diagnosed her as having an alcohol dependence.  Her Ten Broeck records also indicate that the company nurse at UPS referred her to the program.

Plaintiff struggled to remain sober after treatment.  In July of 2003, Plaintiff was arrested for driving under the influence of alcohol.  She pleaded guilty to the offense and was placed on home incarceration.  Lisa Jo Rowan ("Rowan"), Plaintiff's supervisor, was aware of the charge and the conditions of her sentence.

During this same period, Plaintiff's continued to miss scheduled workdays.  Between May 1, 2003 and September 17, 2003, Plaintiff had six unplanned absences, one no-show and one tardy.  She received a letter on August 13, another on September 4, and another on September 17, informing her that she was approaching the maximum number of absences under UPS's policy.  Each letter informed Plaintiff that she would not be entitled to another absence until November 1.

Despite the repeated warnings, Plaintiff called in sick on October 21, 2003, two days before she was fired.  She told her supervisor that her stomach was upset and although her supervisor could have disciplined her for missing work again, she did not discipline her in any way. The next day, Plaintiff called Mr. Cherry, her manager, to report another absence.  She had been drinking heavily the night before and felt too sick to work.  However, she did not tell Mr. Cherry about her drinking.  Instead, she told Mr. Cherry that she needed to stay home to wait for an air conditioning repairman.  Mr. Cherry told her that she was required to report to work

despite her request for the day off.  Plaintiff followed his instructions and reported to work.

When Plaintiff arrived at the UPS facilities, one of her coworkers suspected that she was under the influence of alcohol.  The coworker anonymously reported the suspicions to Greg Kerley ("Kerley), another one of Plaintiff's supervisors.  Kerley enlisted the help of Keith Stolz ("Stolz") from UPS's human resources department.  Kerley and Stolz observed Plaintiff's behavior and recorded their observations in a Reasonable Cause/Suspicion Observation Form.  According to their observations, Plaintiff exhibited several symptoms of intoxication.  Her skin was flushed; her eyes were red; she was anxious and irritable; and she smelled of alcohol.  Based on these factors, Kerley and Stolz asked Plaintiff to take a blood-alcohol test.  Plaintiff consented to the test.  Plaintiff was tested twice, to ensure the accuracy of the results. On the first test, Plaintiff registered a blood-alcohol level of .185.  On the second test, she registered a level of .177.

On October 23, 2003, Plaintiff was discharged from her position.  Cherry explained to Plaintiff that she was fired for violating UPS policy by reporting to work while intoxicated.  As Cherry explained, UPS has a written policy prohibiting the use of alcohol on the workplace.  The policy is contained in UPS's employee manual, entitled "Working Together."  The policy states that "[t]he presence of alcohol or any illegal substance in a person's system is forbidden while on company time or while on company property."  Plaintiff was aware of the policy and was also aware that an employee could be discharged for violating it.

II.

Summary judgment is appropriate if no genuine issue of material facts exists and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III.

The Americans with Disabilities Act (the "ADA") prohibits employers from discriminating against "a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 2112(a).[1] Plaintiff claims that she suffered discrimination as a result of her disability of alcoholism. Alcoholism can qualify as a disability under the KCRA. *See Moorer v. Baptist Memorial Health Care System*, 398 F.3d 469, 479 (6th Cir. 2005) (analyzing the ADA). Because Plaintiff has presented no direct evidence of discrimination, to establish a prima facie case, Plaintiff must show: (1) she was "disabled;" (2) she was otherwise qualified to perform the essential functions of the job; (3) she suffered an adverse employment action (4) her employer knew or had reason to know of her disability; and (5) either the position remained open or a non-disabled person replaced her. *Brenneman v. Medcentral Health Sys.,* 366 F.3d 412, 417 (6th Cir. 2004) (citation omitted); *see also Martin v. Barnesville Exempted Village Sch. Dist. Bd. of Educ.*, 209 F.3d 931, 934 (6th Cir. 2000).

### A.

A "disability" means either (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. *Moorer*, 398 F.3d at 479. Plaintiff alleges that she suffered from a physical or mental impairment–alcoholism–that substantially limited the

---

[1] Although Plaintiff asserts her cause of action under the KRCA, the KCRA is interpreted consonant with the Americans with Disabilities Act ("ADA"). *Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir. 2001).

major life activity of working.² "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs" or "'a broad range of jobs in various classes.'" *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999) (quoting 29 C.F.R. § 1630.2(j)(3)(i)).

In this case, Doctors at Ten Broeck Health Care, a facility specializing in substance-abuse problems, diagnosed Plaintiff with alcohol dependence in January of 2003. Plaintiff has testified that she continued to drink during the period leading up to her discharge in October of 2003. Plaintiff has also testified that because of her alcoholism, it was impossible for her to maintain a regular work schedule. Arguably, this evidence is sufficient to establish that Plaintiff suffered from a "disability" under the ADA because the inability to maintain a regular work schedule would render Plaintiff unable to work in a broad class of jobs.³

However, the Court has serious doubts as to whether Plaintiff has proven the second element of a *prima facie* case: that she was qualified to perform the essential functions of her job. Plaintiff has conceded that during the six-month period leading up to her discharge, she had more absences than employees were allowed under UPS policy. As the Sixth Circuit has previously held, "'[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA.'" *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) (quoting *Tyndall v. National Educ. Ctrs. Inc.*, 31 F.3d 209, 213 (4th Cir. 1994)); *see also Brenneman v. Medcentral Health Sys.*, 366

---

²There is no question that working can qualify as a "major life activity" under the ADA and the KCRA. *See Moorer*, 398 F.3d at 479 ("a major life activity means 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working'") (quoting 29 C.F.R. § 1630.2(i)).

³ Plaintiff has presented no evidence that UPS regarded Plaintiff as being disabled.

5

F.3d 412, 419 (6th Cir. 2004) (holding that a pharmacy technician was not qualified to perform the essential functions of his position due to his excessive absenteeism).  Thus, paradoxically the same evidence that suggests a disability–her inability to maintain a regular work schedule–also proves that Plaintiff could not obtain relief under the KCRA as a matter of law.  However, the Court need not resolve this issue.

B.

Once a plaintiff establishes a prima facie case of disability discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Brenneman*, 366 F.3d at 417.  The burden then shifts back to plaintiff to demonstrate that the employer's stated reason is a pretext for discrimination.  *Id.* at 417-18.

Here, UPS says that it fired Plaintiff because she violated a company rule prohibiting work under the influence of alcohol.  Generally, violation of a valid workplace rule qualifies as a legitimate, non-discriminatory reason to discharge an employee.  More specifically, an employer may discharge an employee for violating a rule prohibiting intoxication at the workplace even if the employee is an alcoholic.  *Mararri v. WCI Steel, Inc.*, 130 F.3d 1180, 1183 (6th Cir. 1997); *Maddox v. University of Tennessee*, 62 F.3d 843 (6th Cir. 1995).  This is so because an employer is entitled to hold an employee to the same standards of behavior as other employees even if the unsatisfactory performance is related to the employee's alcoholism.  *Maddox*, 62 F.3d at 848 (citing 42 U.S.C. § 12114(c)(4)).  Here, UPS had an express policy prohibiting intoxication at the workplace.  On October 22, 2003 Plaintiff reported to work while under the influence of alcohol, thus violating the rule.  To discharge any employee under these circumstances satisfies the burden of articulating a legitimate, nondiscriminatory reason.

To demonstrate pretext and to avoid dismissal of her claims, Plaintiff must "produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994) (citing *Gaworski v. ITT Comm. Finance Corp.*, 17 F.3d 1104, 1109 (8th Cir. 1994)). In this case, Plaintiff argues that a reasonable jury could reject UPS's explanation for discharging her because UPS forced her to report to work on October 22–the day on which she failed the blood-alcohol test–even though she had requested the day off. However, to deny Plaintiff's request for a day off was certainly reasonable and was not suggestive of another motive. Plaintiff had already exceeded the allowable number of absences and the only justification she gave for taking an additional day was that she had to meet a repairman. Even if Plaintiff's absence was related to her alcoholism, UPS had no duty to disregard its office-wide attendance policy. *Maddox*, 62 F.3d at 848.

Only pure speculation could support the idea that UPS actually sought to trap Plaintiff in a drunken appearance at work. There is no evidence that UPS knew that Plaintiff would be intoxicated when she reported to work that day. That morning, she told Cherry that she needed the day off to wait for an air-conditioning repairman but she failed to tell him that she had been drinking. No evidence suggests that her speech was slurred or that some other overt indication of intoxication could have alerted Cherry to her real condition. Consequently, no evidence suggests the reasonable inference of a motive different than the one asserted. For all these reasons, that UPS required Plaintiff to report to work does not constitute evidence of pretext.

C.

In the alternative, Plaintiff asserts that UPS failed to reasonably accommodate Plaintiff's alcoholism. The failure of an employer to reasonably accommodate an employee's known disability can constitute an adverse employment action under Kentucky law. *See Peltier v. United States*, 388 F.3d 984, 989 (6th Cir. 2004). Here, Plaintiff contends that UPS denied her leave to attend an alcohol rehabilitation program after she failed the blood-alcohol test on October 22, 2003. However, there is no evidence that Plaintiff requested an opportunity to attend rehabilitation at that time. An employer has no duty to provide a particular accommodation unless the employee requests that the employer do so. *See Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046-47 (6th Cir. 1998) (noting that reasonable accommodation is not at issue if the plaintiff has never requested accommodations). Therefore, no reasonable juror could find UPS liable for failure to allow Plaintiff to attend rehabilitation.

In summary, Plaintiff is probably not a "qualified individual" under the ADA because she cannot maintain a regular work schedule. Even if qualified, UPS has stated a legitimate, non-discriminatory reason for its decision to terminate. Plaintiff has presented no evidence suggesting that the stated reason was a mere pretext. Moreover, Plaintiff never requested an accommodation that UPS denied.

IV.

Plaintiff also claims that she was fired because she is a female in violation of the KCRA. Because Plaintiff has presented no direct evidence of any type of discrimination, to set forth a *prima facie* claim of sex discrimination, she must show that she: (1) is a member of a protected class; (2) suffered an adverse employment action; (3) performed her position satisfactorily; and

(4) was treated less favorably than a similarly situated individual outside of her protected class. *Singfield v. Akron Metropolitan Housing Auth.*, 389 F.3d 555, 561 (6th Cir. 2004); *see also White v. Rainbo Baking Co.*, 765 S.W.2d 26, 29 (Ky. Ct. App. 1988) (interpreting the KCRA). Here, Plaintiff, a female, is a member of a protected class. She suffered an adverse employment action when she was terminated on October 23, 2003.

However, Plaintiff has failed to prove that she was treated less favorably than similarly situated male employees at UPS. Plaintiff alleges that three male employees were intoxicated at the workplace in violation of UPS's drug and alcohol policy and that none of them was terminated. Plaintiff testified at her deposition that Mark Berger ("Berger"), a UPS employee, told her that he observed Lew Van Meter ("Van Meter") intoxicated while he was on duty as a UPS pilot. UPS required Van Meter to undergo six months of rehabilitation but did not discharge him. She also testified that Sandy Hanish ("Hanish"), a crew scheduler, told her that two UPS employees, who worked on the ramp, tested positive for prohibited substances and at least one of them was allowed to remain employed at UPS.

This evidence is insufficient to meet Plaintiff's *prima facie* burden because it is inadmissible hearsay. *See Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 495 (6th Cir. 2002) ("A party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact."). Plaintiff has no personal knowledge that Van Meter and the two ramp employees reported to work while they were intoxicated. She is relying entirely on statements made by two low-level employees who have neither testified under oath nor submitted their affidavits. Because these out-of-court statements are being offered to prove the truth of the matters asserted, they constitute hearsay and are inadmissible

9

unless they meet an exception to the hearsay rule. See Fed. R. Evid. 801(c) (defining hearsay); see also Fed. R. Evid. 802 (stating that hearsay is inadmissible absent an exception).

Only one exception to the hearsay rule could possibly apply to these statements. Statements of a party's employees are party admissions if they were made during the agency or employment and they relate to a matter within the scope of the agency or employment. Fed. R. Evid. 801(d)(2)(D). Here, neither Berger nor Hanish, the declarants, had any involvement in personnel decisions or in the enforcement of the UPS drug and alcohol policy. Accordingly, their statements about the workplace sobriety of other employees do not relate to matters within the scope of their employment. Moreover, the statements have no other indicia of reliability. They appear to be nothing more than office gossip. Finally, the Court sees no compelling need to use this unreliable testimony because the actual evidence of the employment actions and its similarity or dissimilarity to Plaintiff's circumstances could have been obtained definitively from UPS employee records. For all these reasons, the statements cannot be considered on a motion for summary judgment.

Plaintiff also testified that Ron Woodard ("Woodard"), an assistant chief pilot, was demoted but not terminated due to an alcohol-related problem. However, Plaintiff has presented no evidence that Woodard reported to work while intoxicated or that he violated any other UPS policy. Therefore, Plaintiff has failed to prove that Woodard was a similarly situated individual. *See Minadeo v. ICI Paints*, 398 F.3d 751, 764 (6th Cir. 2005) ("to make a comparison of a discrimination plaintiff's treatment to that of . . . an employee outside the protected class. . . the plaintiff must show that the comparables are similarly-situated in all respects") (internal quotations and citations omitted).

Because Plaintiff has failed to present sufficient evidence to prove that she was treated less favorably than a similarly situated male employee, UPS is entitled to summary judgment on her sex discrimination claim.

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record